IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

VERNON CAPSHAW                                                                              PLAINTIFF

      v.                            Civil No. 6:09-cv-06070

CAPTAIN MEL STEED, Garland
County Detention Center; LT.
RADLEY, Garland County Detention
Center; SHERIFF LARRY SANDERS;
FORMER SGT. ROWE; DEPUTY
JOSH CANNON, Garland County
Detention Center                                                                              DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Vernon Capshaw (hereinafter Capshaw), filed this case pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Capshaw is currently an inmate of the Arkansas Department of Correction (ADC). This lawsuit is about the conditions under which Capshaw was confined while at the Garland County Detention Facility (GCDF).

Defendants filed a summary judgment motion (Doc. 20). To assist Capshaw in responding to the summary judgment motion, I propounded a questionnaire (Doc. 25). Capshaw filed a timely response (Doc. 27) and the motion is now ready for decision.

### I. BACKGROUND

Capshaw was incarcerated at the GCDF from November 15, 2007, until July 24, 2009. *Plaintiff's Response* (Doc. 25)(hereinafter *Resp.*) at ¶ 1. In April of 2009, Capshaw was convicted and sentenced to a term of imprisonment at the ADC. *Id.* at ¶ 2.

Captain Steed is the jail administrator for the GCDF. *Resp.* at ¶ 5. Larry Sanders was during all times relevant to the complaint the duly elected Sheriff of Garland County, Arkansas. *Id.* at ¶ 6.

From the late afternoon of March 6, 2008, to mid-day on March 8, 2008, Capshaw maintains he was placed in a cell with no running water, a leaking roof, and human feces on the wall. *Resp.* at ¶ 4(A) & ¶ (B). He was locked in the cell twenty-four hours a day. *Id.* at ¶ 4(C). He was not allowed to leave the cell to use a working toilet. *Id.* at ¶ 4(D).

He received three meals a day and a 4 ounce cup of water with each meal. *Resp.* at ¶ 4(E) & ¶ 4(F). No water or some other type of drink was available between meals. *Id.* at ¶ 4(G). Capshaw requested but was not provided with cleaning supplies. *Id.* at ¶ 4(H). According to Capshaw, his requests were "ignored" and he was basically "told . .. the problems were caused by inmates such as" himself. *Id.*

Capshaw had a mattress to sleep on. *Resp.* at ¶ 4(I). He had clothing but it was wet and he was unable to get clean or dry clothes. *Id.* at ¶ 4(K). It was not raining the two days Capshaw was in the cell. *Id.* However, there was snow that was melting and coming through the roof. *Id.* Capshaw maintains there was a good size puddle on the floor at the end of the bunk. *Id.* He indicates that he attempted to get a mop but his request was denied. *Id.* No efforts were made to fix the leak. *Id.* Capshaw states he wrote a grievance about the conditions of the cell. *Id.* at ¶ 4(L). In response, he indicates Sergeant Rowe stated that "maybe I did not spread feces on the wall but I did my fare share of destruction. She stated the jail problems were caused by inmates such as myself." *Id.*

During the month of May of 2009, Capshaw maintains he was placed in a cell with no drinking water and no water to wash his hands. *Resp.* at ¶ 7. There was no running water in the cell. *Id.* at ¶ 7(B). The water had been turned off because the toilet leaked. *Id.*

Capshaw received something to drink with each meal. *Id.* at ¶ 7(A). Between meals, Capshaw was able to obtain drinking water. *Id.* at ¶ 7(C). He was locked in the cell ten to twelve hours a day and sometimes up to twenty hours. *Id.* at ¶ 7(D). He was able to shower on a routine basis. *Id.* at ¶ 7(E). He had access to basic hygiene items such as soap, shampoo, and toothpaste. *Id.* at ¶ 7(F). He had a

mattress to sleep on although the mattress was usually on either the cell or day-room floor. *Id.* at ¶ 7(G). He had adequate clothing. *Resp.* at ¶ 8.

Capshaw asserts that due to the conditions at the jail he developed boils. *Resp.* at ¶ 10. He also states he sustained a few injuries due to a slip and fall. *Id.* Specifically, he states he twisted his ankle and his wrist. *Id.*

Capshaw never spoke to, or communicated with, Sheriff Sanders about the conditions under which he was confined and how he believed the conditions were inadequate. *Resp.* at ¶ 11. However, Capshaw asserts Sheriff Sanders was aware of the problems and did nothing to fix the broken toilets or the leaky roof. *Id.*

With respect to Captain Steed, Capshaw maintains as Jail Administrator Captain Steed should have answered the grievance Capshaw submitted to him about the conditions he was subjected to. *Resp.* at ¶ 12. With respect to Sergeant Rowe, Capshaw states he submitted a grievance about the conditions in the cell and she responded that: "Maybe I didn't break the toilet or spread feces on the wall, but I did my fair share of damaging jail property." Moreover, Capshaw contends she left him in the cell. *Id.*

With respect to Lieutenant Radley, Capshaw indicates he spoke with him about being locked in a cell with no water. *Resp.* at ¶ 14. Capshaw asserts Radley stated there was no room to move Capshaw and that he would have to just deal with it. *Id.* Finally, with respect to Deputy Josh Cannon, Capshaw indicates he is the officer who placed Capshaw in the cell with feces on the wall, no water, and a leaky roof. *Id.* at ¶ 15. Although Capshaw told Cannon about the problems in the cell, Cannon just laughed and left Collins in there. *Id.*

## II.  DISCUSSION

Defendants maintain that the facts, taken in the light most favorable to Capshaw, do not rise to

the level of a constitutional violation. Further, they argue that they have been sued in their official capacities and that there is no suggestion of a custom or policy of Garland County that resulted in the violation of Capshaw's constitutional rights.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc., whether brought by pretrial detainees or convicted inmates). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal

3

quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case. First, Capshaw maintains his confinement to a cell with no running water, a leaking roof, and human feces on the wall from late afternoon on March 6, 2008, to mid-day on March 8, 2008, violated his rights. In evaluating whether an inmate's exposure to unsanitary conditions is unconstitutional, the Court is to focus on the length of the exposure to unsanitary conditions and how unsanitary the conditions were. *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003)(*citing Hutto v. Finney*, 437 U.S. 678, 686-87 (1978)); *see also Whitnack v. Douglas County*, 16 F. 3d 954, 958 (8th Cir. 1994)(length of time required for conditions to be unconstitutional decreases as level of filthiness increases). The Eighth Circuit has noted a need to be "especially cautious about condoning conditions that include an inmate's proximity to human waste." *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990).

I believe there are genuine issues of fact as to whether Capshaw was exposed to unconstitutional conditions of confinement from March 6th to March 8th. While the period of time he was confined to the cell is relatively short, he was locked down twenty-four hours a day. There was feces on the wall and his requests for cleaning materials were refused or ignored. He was required to eat his meals in the cell. Capshaw also maintains that the roof was leaking; his clothes were wet; his requests for dry clothes were refused; and his requests for a mop were refused. Finally, he asserts that as a result of the

unsanitary conditions he developed boils.

Second, Capshaw maintains he was subjected to unconstitutional conditions of confinement in May of 2009, when he was placed in a cell with no drinking water and no water to wash his hands. Capshaw received three meals a day and something to drink with each meal and was able to obtain drinking water between meals. *Resp.* at ¶¶ 7(A) & (C). He was able to shower on a routine basis. *Id.* at ¶ 7(E). He was not on twenty-four hour a day lock-down. *Id.* at ¶ 7(D). He had access to basic hygiene items. *Id.* at ¶ 7(F). He had a mattress to sleep on. *Id.* at ¶ 7(G). He had adequate clothing. *Id.*

I find no genuine issues of fact as to whether Capshaw was subjected to unconstitutional conditions of confinement in May of 2009. "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 305. "Although some conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, they do so only when they have a mutually enforcing effect that produces a single, identifiable human need such as food, warmth, or exercise--for example, a low cell temperature combined with a failure to issue blankets." *Tokar v. Armontrout*, 97 F.3d 1078, 1082 (8th Cir. 1996)(internal quotations and citation omitted). There has been no such showing here.

Finally, Capshaw maintains having to sleep on a mattress on the floor amounts to unconstitutional conditions of confinement. Having to sleep on a mattress on the floor does not, without more, constitute unconstitutional conditions of confinement. *See e.g., Hubbard v. Taylor*, 538 F.3d 229 (3d Cir. 2008).

With respect to any official capacity claims, Capshaw was asked whether he contended a custom, policy, or practice of Garland County was the moving force behind the violation of his

5

constitutional rights. *Resp.* at ¶ 16(B). He responded that he did not understand the question. *Id.*

In order for a governmental entity to be liable under 42 U.S.C. § 1983, Capshaw must show an official policy or widespread custom or practice of unconstitutional conduct that caused the deprivation of his constitutional rights. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 & n. 55 (1978). Whether or not Capshaw understands this concept, he has not alleged the existence of any facts that suggest the existence of a policy, custom, or practice of Garland County.

### III. CONCLUSION

For the reasons stated, I recommend that the Defendants motion for summary judgment (Doc. 20) be granted in part and denied in part. Specifically, I recommend that the motion be granted with respect to: (1) Capshaw's claim that he was subjected to unconstitutional conditions of confinement in May of 2009; (2) his claim that he was required to sleep on a mattress on the floor; and (3) his official capacity claims. This leaves for later determination Capshaw's claim that he was subjected to unconstitutional conditions of confinement from March 6th to March 8th of 2008.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of February 2011.

/s/ *J. Marschewski*
 HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE